CASSIDY et v. ELLERHORST et al, Exrxs.

No. 18297. Supreme Court

### ON MOTION TO CERTIFY

**635. INHERITANCE TAX**—Are stocks and bonds of foreign corporation belonging to a non-resident, found in his safe deposit box in Ohio, taxable?

#### Epitomized Statement

This case comes before the Supreme Court on a motion to certify. This was an action by the Tax Commission of Ohio to recover taxes on certain bonds and stocks belonging to Ellerhorst, deceased. Ellerhorst at the time of his death was a resident of Bellevue, Campbell County, Kentucky. However, during his life time he had been engaged in

(Continued on Page 669)

## CURRENT OHIO COURT of APPEALS CASES
### Weekly Advance Abstract Opinions

### No. 689
### MAXA v. CLEVE. UN. TERMINALS CO.
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5050. Decided March 28, 1924

465. ERROR—Error can be prosecuted from Insolvency Court to Court of Appeals.

313. CORPORATIONS—Ten per cent of subscription paid not prerequisite to certificate of incorporation.

458. EMINENT DOMAIN—1. Railroad has right to condemn property although it does not use all 'air rights" for railroad purposes.

· 2. Land condemned for depot purposes held to be taken for public purposes.

3. Assessment of damages held not so inadequate as to require reversal.

VICKERY, P. J.
Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action by the Union Terminals Co. filed in the Cleveland Insolvency Court, to condemn the property of Lewis Maxa, together with many other parcels of land necessary for a Union Depot. The defendant claimed that the plaintiff had no right to exercise the power of eminent domain, for (1) There was a failure adequately to comply with the statutory requirements in the organization of the corporation. (2) There was an admixture of proposed private and public use. (3) That the corporation was a mere dummy company, not pursuing purposes of its own, but of others, individual and corporate.

The evidence disclosed that although the certificate of the subscription to the stock was sent to the Secretary of State, the stock had not all been paid for, or had only been paid for by check, and the checks remained uncollected until some time long thereafter. The evidence also disclosed that acres of land had been condemned and many valuable buildings wrecked. Maxa claimed that the upper portion of the building to be erected was to be used for private purposes and not for the public, and therefore these "air rights" could not be condemned. The jury assessed damages for Maxa in the sum of $140,000. Maxa prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. Error proceedings can be prosecuted directly from the Insolvency Court or to the Common Pleas and from the Common Pleas to the Court of Appeals.

2. 8633 GC. and 8632 GC. do not provide that ten per cent of the money must be paid in by the subscribers to the stock before the certificate of subscription is filed with the Secretary of State.

3. Under the statutes of Ohio the only thing which can be condemned and appropriated is land, and when a railroad company appropriates the land it appropriates everything above the land. If the railroad has a right to appropriate the land for the purpose of a depot and does not use it all for railroad purposes there is nothing to prevent the use of a part of it for private purpose so long as such use inures to the benefit of the public.

4. As the record shows that the land was to be used for depot purposes, it comes within the purview of the statute authorizing the condemnation proceedings for such use.

5. As there is no evidence tending to show that the Union Terminals Co. was a "dummy corporation," but on the contrary shows that the corporation was formed for a specific purpose, it cannot be said that it was not performing a proper purpose.

6. As the verdict of the jury does not appear to be manifestly improper, this court cannot set the same aside, as· the evidence was in conflict as to the actual value of Maxa's property.

Attorneys—Moore, Miller & Moore, and White, Cannon & Spieth, for Maxa; Boyd, Cannon, Brooks & Wickham, and Baker, Hostetler & Sidlo, and Tolles, Hogsett, Ginn & Morley, and C. W. Stage, for Terminals Co.; all of Cleveland.

### No. 690
### TAYLOR v. HARTZELL
Ohio Appeals, 7th Dist., Mahoning County
Decided March 21, 1924

683. JURY—Juror not guilty of misconduct by conversing about his wife to relative of party.

225. CHARGE TO JURY.
Failure to define "accident" in automobile negligence case not prejudicial.

829. NEGLIGENCE.
Error in court's charge on contributory negligence not reversable when jury finds for plaintiff on that feature of case.

POLLOCK, J.        Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action for personal injuries. Freda Taylor was riding in the front seat of a Ford car operated by her husband, when the Ford was struck by another car at a street intersection. During the trial one of the relatives talked to one of the jurors about the

## STATE COURT OF APPEALS—Continued

condition of the latter's wife, who was then in the hospital. No witnesses testified except Taylor and her husband and Hartzell as to the rate of speed that the two cars were going at the time of the collision. The jury returned a verdict for Taylor, whereupon Hartzell prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. As nothing was said between the juror and the relatives of the defendant of a prejudicial nature, and as counsel for the plaintiff did not object to proceedings with the juror, no prejudicial error was committed in this respect.

2. As the jury is presumed to know the meaning of common words, a failure to define the word "accident" was not prejudicial error.

3. As the jury found in answer to a special interrogatory that the plaintiff was not guilty of contributory negligence, the plaintiff cannot complain of any error in the court's charge in that respect.

4. It cannot be said that the verdict was manifestly against the weight of the evidence.

Attorneys—Emmons & Emmons, for Taylor; Henderson & Barrett, for Hartzell; all of Youngstown.

---

### No. 691
### BALLARD SALES CO. v. STONE
Ohio Appeals, 4th Dist., Montgomery County
No. 599. Decided Sept. 19, 1924

**725. LIMITATION OF ACTIONS**—Under verbal contract not to be performed within a year party entitled to recover for services actually rendered separately from claim for unexecuted part.

ALLREAD, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action for salary and commissions. Stone entered into a contract with the Ballard Sales Co., which provided that he was to receive a salary of $6,000 per year payable $250 semi-monthly. Of the two semi-monthly payments, $200 was to be chargeable against a sales commission of one per cent upon sales of automobiles, settlement to be made at the end of the year. Stone claimed that $500 per month was paid for six months, at which time he was discharged and that after discharge he reported for several days for service and was finally ordered away. He claimed that there was due and owing him the sum of $793.57, together with damages to the extent of $3,000.

The defendant claimed that plaintiff was to receive $500 per month as long as his services were satisfactory. The jury returned a verdict for $1800. Upon a motion for a new trial

the court held that Stone could only recover from December 1, 1921, to June 6, 1922, for the reason that the contract came within the statute of frauds and being for a longer period than one year the unperformed portion of the contract was void. The Sales Co. prosecuted error, claiming that the contract was void as an entirety. In affirming the judgment of the Common Pleas, the Court of Appeals held:

1. Although an action cannot be maintained upon a verbal contract, not to be performed within one year, yet a party can recover for services actually rendered separately from the claim for the unexecuted part of the contract.

Attorneys—James & Coolidge, for Ballard Sales Co.; Kusworm & Shaman, for Stone; all of Dayton.

---

### No. 692
### FALKENSTEIN v. GAFFNEY et al
Ohio Appeals, 1st Dist., Hamilton County
No. 2352. Decided Feb. 25, 1924

**1101. SPECIFIC PERFORMANCE—1.** Damages will not be assessed in specific performance when plaintiff knows that property has been conveyed away at time action brought.

2. Conveyance to third party held to be made in good faith defeats specific performance.

3. Party not entitled to specific performance when unable to perform himself.

BUCHWALTER, J.

Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action for specific performance. Oct. 13, 1922, Rosa Gaffney made an agreement with Falkenstein to sell to him a certain piece of property for $43,000 and as a part consideration therefor to accept from Falkenstein an apartment house of the value of $12,500, located at Norwood, Ohio. The building which Falkenstein was purchasing was located in Cincinnati. Falkenstein paid $500 to the agent of Gaffney as an advance payment. In August, 1922, Gaffney entered into a contract to sell the property to Bessie Schultz. But Gaffney denied the authority of her attorney to enter into this agreement and on Sept. 20, 1922, brought an action to quiet title.

The Common Pleas held that this contract was signed without the authority of Gaffney and therefore refused to grant specific performance of the same in favor of Schultz. Schultz, being dismissed, prosecuted error, but on Jan. 16, 1923, a settlement was made and Gaffney conveyed the property in question to Schultz. Thereafter this action was brought by Falkenstein for a specific performance. Within a few days he received his $500 back

and a month later leased a portion of his Norwood apartment to one Williams for one years and conveyed said apartment to one Gordon shortly thereafter. Falkenstein claimed that Schultz conspired with Gaffney to defeat the plaintiff's contract. As the Common Pleas refused the relief prayed for, an appeal was prosecuted. In refusing the relief, the Court of Appeals held:

1. Where it appears that prior to the bringing of an action for specific performance of a contract to exchange one tract of land for another, the plaintiff had knowledge, both actual and constructive, that the defendant had already conveyed the land sought in exchange to a third party, the court will not retain the case for assessment of damages, but will relegate the plaintiff to an action at law.

2. As the evidence disclosed that the defendants acted in good faith and had not conspired to defeat the plaintiff's contract, plaintiff was not entitled to specific performance.

3. As the plaintiff had put it out of his power to carry out his part of the agreement, and although during the trial he secured an option to repurchase the apartment in Norwood, he did not secure a cancellation of the lease to Williams, and therefore was not entitled to specific performance as he was not in a position to perform himself.

Attorneys—W. W. Symmes, for Falkenstein; Froome Morris and Weiland and Strother, for Bessie Schultz; all of Cincinnati.

---

No. 693
PITTSB. C. C. & ST. L. RY. CO. v.
KILPATRICK, Adm.
Ohio Appeals, 4th Dist., Montgomery County
No. 609. Decided September 6, 1924

1245. VERDICTS—$9,000.00 damages for death of wife in collision between automobile and cut of cars unlighted at railroad crossing not against evidence.

801. MUNICIPAL LAW—Ordinance requiring a cut of cars on railroad crossing at night to carry light in front, held valid.

359. DEATH—Marriage of surviving spouse held not admissible to mitigate damages in action for death by wrongful act.

BY THE COURT.
Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action for wrongful death. The deceased was killed by a collision between an automobile and cut of freight cars backed across a street in Dayton. The deceased was a passenger in the automobile. The accident happened shortly after 11 o'clock p. m. A watchman was maintained at the crossing until 11 o'clock p. m., but there was no watchman on duty at the time of the accident. The evidence was in conflict as to whether there were any lights on the front end of the moving cars. During the trial the court admitted evidence of a city ordinance which required that lights be placed on the front end of moving cars when they were about to cross a street at night. The court, excluded evidence of the remarriage of plaintiff. The jury returned a verdict for Kilpatrick in the sum of $9,000, whereupon defendant prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. A municipality has a right to regulate the use of the public street and the manner in which cars are backed or pushed across such street. Therefore, an ordinance requiring a cut of cars to carry the lights at night is not unreasonable or improper.

2. In an action for wrongful death, evidence of the remarriage of the surviving spouse is not admissible for the mitigation of damages. Davis v. Guarnieri, 45 OS. 470, followed.

3. The verdict held not manifestly against the weight of the evidence.

Attorneys—Matthews & Matthews, Dayton, for Railway Co.; Frank S. Monnett, Columbus, and I. L. Holderman and Mattern, Brumbaugh & Mattern, Dayton, for Kilpatrick.

---

No. 694
ARMSTRONG et al v. SMITH
Ohio Appeals, 1st Dist., Hamilton County
No. 2169. Decided Nov. 26, 1923

1271. WILLS—Finding of jury that will was executed under undue influence of relatives of testatrix not reversed.

BUCHWALTER, J.         Epitomized Opinion
Published Only in Ohio Law Abstract

This was an action to set aside a will. Armstrong and Louisa Smith had accumulated a considerable amount of property during their life time. Finally, plaintiff transferred one-half interest in the real estate to his wife, Louisa. In 1902, after some negotiations, Louisa Smith bought plaintiff's interest in a certain piece of property for $21,000. This property was deeded to one Fitzgerald and then transferred to Mrs. Smith's brother, William Armstrong. Detectives were employed by Mrs. Smith's relatives to watch the actions of Mr. Smith. By her will all of her property was left to her brothers and sisters. The jury held that the will was made under undue influence, whereupon error was prosecuted to the Court of Appeals, which held:

1. Taking into consideration all the circumstances of the case, the fact that the defendants secretly connived to gain control of the property, it cannot be said that the finding of the jury was manifestly against the weight of the evidence.

Attorneys—T. M. Cowguill and J. T. Rhyno, for Armstrong; James G. Stewart and H. C. Holsinger, for Smith; all of Cincinnati.

## STATE COURT OF APPEALS—Continued

### No. 695
### ARNOLD v. TRAUBERMAN et al
No. 2182. June 16, 1923
Ohio Appeals, 1st Dist., Hamilton County

**915. PERSONAL INJURIES—Verdict held proper under circumstances of case.**

HAMILTON, J.
Epitomized Opinion
Published Only in Ohio Law Abstract

Trauberman brought an action in the Munivipal Court of Cincinnati for personal injuries which he claimed were caused by the negligence of one Arnold and one Huber. The plaintiff claimed that the cars of the two defendants collided at a street intersection and that Huber's car was forced upon the sidewalk against defendant. Plaintiff recovered a verdict for $300 against Arnold alone. The Municipal Court reduced this to $240 and entered judgment for the plaintiff. Arnold prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. That there was no prejudicial error in the record which would justify a new trial and moreover, that the verdict was not manifestly against the weight of the evidence.

Attorneys—Taft & Taft, for Arnold; De Camp, Sutphin & Brumleve, for Trauberman et al; all of Cincinnati.

### No. 696
### HOCKING VALLEY RY. CO. v. WHITAKER
No. 4019. Decided June 9, 1924

**453. EMPLOYERS' LIABILITY ACT—1. Employes assume risk of accidental injury under federal act.**

**2. Where there is no evidence of negligence on the part of fellow-servant, directed verdict held proper.**

PER CURIAM.
Epitomized Opinion
Published Only in Ohio Law Abstract

Whitaker brought an action to recover damages from the Hocking Valley R. R. Co. for personal injuries sustained by him while in its employ. At the time of the accident plaintiff and defendant were both engaged in interstate commerce. Whitaker's duties consisted in transferring freight to and from cars at Marion, Ohio. At the immediate time of the injury he was unloading vaults from a box car when one of the vaults fell on his arm, seriously injuring him.

The plaintiff averred that the Railroad Company was negligent in that a fellow-servant failed to assist in preventing the vault from falling from the truck; in that the Railroad Company failed to equip the truck with materials to prevent the vault from slipping off the truck; in that the fellow-servant failed to warn plaintiff and in that the fellow-servant failed to place the truck in a proper position. The answer denied negligence and averred contributory negligence and assupmtion of risks on the part of plaintiff. In reversing the judgment of the lower court, the Court of Appeals held:

1. Under the Federal Employers' Liability Act (Comp. St. Par. 8657-8665) an employe assumes the risk of an accidental injury, incident to the employment, not caused by the negligence of an employer or of a fellow-servant.

2. As there was no evidence of any negligence on the part of a fellow-servant, a motion for a directed verdict should have been sustained.

Attorneys—Fred C. Rector, for Hocking Co.; Herman J. Nord and David F. Pugh, for Whitaker; all of Columbus.

### No. 697
### SCHWARTZ v. SWIFT & CO.
Ohio Appeals, 7th Dist., Mahoning County
Decided March 21, 1924

**1063. SALES—Acceptance of an offer to sell for a given price constitutes a binding contract.**

POLLOCK, J.
Epitomized Opinion
Published Only in Ohio Law Abstract

Swift & Co. of Amsterdam, N. Y., brought an action against Schwartz, who was conducting a retail business in Youngstown, O., under the name of the Swift Notion Co. and selling the former's merchandise. The Swift Co. brought an action against Schwartz to recover the purchase price of certain articles sold to Schwartz. Schwartz admitted the indebtedness but claimed $177.00 as damages for failure of the Swift Co. to ship certain goods. The case was tried in the Municipal Court and after judgment, was appealed to the Common Pleas. This court rendered a judgment for the Swift Co. and dismissed the cross-petition. Schwartz then prosecuted error. In reversing the judgment of the lower court, the Court of Appeals held:

1. As the letter written by Schwartz asking for samples asked for the cash price on immediate delivery, the offer of the seller was an offer to sell at a certain price, and the acceptance of this offer by the buyer, Schwartz, constituted a binding contract.

Attorneys—McKain & Ohl, for Schwartz; Dorman and Woodside, for Swift; all of Youngstown.

No. 698
KRUSZEWSKI v. KOZLOWSKI
Ohio Appeals, 8th Dist., Cuyahoga County
No. 5061. Decided May 26, 1924.

**899. NEW TRIAL—No irregularity in service of summons where no misnomer is made.**

Vickery, P. J., Sullivan and Levine, JJ.

PER CURIAM.　　　　Epitomized Opinion
Published Only in Ohio Law Abstract

Hattie Kozlowski brought suit against Sophia Kruszewski in Cleveland Municipal Court, and designated her as sometimes known under some other name. Service of summons was made upon Sophia, and default judgment was taken against her. After the term expired, her attorney made a motion for a new trial on the ground of there being irregularity in the proceedings, which brought it within the statute which provides for granting a new trial after term by motion instead of petition.

The only irregularity claimed was that the suit was against a person unknown, and the statute provides that when that is true, after the name becomes known it must be inserted by leave of court, and as that was not done an irregularity arose. But the right person was sued, and her name was known and service was made upon her, and there was no necessity of inserting her name afterwards. It does not appear that there was any defense, or any defense was tendered, and the claimed irregularity was none at all. The Court of Appeals approved the judgment below.

Attorneys—D. M. Bader, for Kruszewski; J. S. Kragewski,, for Kozlowski; all of Cleveland.

No. 699
AKRON (City) v. RENNER CO.
Ohio Appeals, 9th Dist., Summit County
No. 807. May 26, 1924

**801. MUNICIPAL LAW—A city, desiring to prosecute a suit to compel the performance of an agreement to improve is not precluded from doing so by the fact that it delays bringing the suit until after a taxpayer has brought suit for the same purpose.**

WASHBURN, J.　　　　Epitomized Opinion
Published Only in Ohio Law Abstract

In 1919, the City of Akron and two railroad companies made an agreement to improve a portion of a street in said city. In 1922, the agreement not being performed, the Renner Products Co. requested the director of law of said city to commence an action to compel the carrying out of the agreement to make the improvement. On Jan. 2, 1923, the Renner Products Co., as a taxpayer, brought an action to compel the making of said improvement. Thereafter, on March 1, 1923, this action was commenced by the city, by its director of law, in the same court, against the same railroad defendants to accomplish the same result. Thereupon said taxpayer at its own request was made a party defendant in this suit and filed a motion asking the court to strike from the files the city's petition and to dismiss its action. The motion was granted by the Common Pleas and the city prosecuted error to the Court of Appeals, which held:

The sole object of the action that a taxpayer may bring under 4314 GC. is to protect the City, which is the real party in interest. The taxpayer by bringing the suit does not supercede and take the place of all the officers of the city; the City may do anything that it could lawfully do if the suit had not been brought. Thereafter the City may join in that suit or it may bring a separate suit to accomplish the same result, and if the city does the latter, the court may not on motion of the taxpayer dismiss the suit of the City. Judgment reversed and cause remanded.

Attorneys—H. M. Hagelbarger, Law Dir., and C. T. Moore, Asst., for City; Greenberger & Hotchkiss, for Renner Co.; all of Akron.

No. 700
ETTINGER v. HANNA ESTATES CO.
Ohio Appeals, 8th Dist., Cuyahoga County

**1106. STATUTE OF FRAUDS—Verbal promise to pay debt of another, sufficient where promissor has purpose in making and promisee performs.**

PER CURIAM.　　　　Epitomized Opinion
Published Only in Ohio Law Abstract

The Hanna Estates Co. brought this action in the Cuyahoga Common Pleas against Glenn D. Ettinger, on a verbal promise to pay the debt of another. Jury was waived and the court found for the Hanna Co., the amount being $540. Error is being prosecuted to the Court of Appeals in this case, which held:

The main contention is that a verbal promise to pay the debt of another is not enforceable under the Statute of Frauds. This case, however, comes within an exception to the rule. Ettinger was desirous to have a mortgage he was intrested in become a first mortgage, but the Hanna Co. had a mortgage ahead of his. So he promised that if it would release its mortgage he would pay the $540, whereupon it cancelled its mortgage. Ettinger had a purpose to serve and the main reason why he made the promise was to get a first mortgage upon the property. The fact that the Hanna Co. did cancel and that he had such a purpose bring the case within the Statute of Frauds, and the judgment of the court below is affirmed.

Attorneys—Price, Shepherd & Graves, for Ettinger; Simmons, De Witt & Vrooman, for Hanna Co.; all of Cleveland.

## STATE COURT OF APPEALS—Continued

### No. 701
### STRACHAN v. COM. RAPID TRANSIT CO. et al

Ohio Appeals, 7th Dist., Mahoning County
Decided April, 1924

647.   INSURANCE—1. Stipulation in insurance policy not contrary to law held binding.

2. Liability of insurance company cannot be enlarged by its action in taking charge of law-suit.

291.   CONSTITUTIONAL LAW—A law enacted after the making of a contract held not to affect contract.

POLLOCK, J.

Epitomized Opinion

Published Only in Ohio Law Abstract

Strachan brought an action for personal injuries and property damage against the Rapid Transit Co. having its principal place of business at Akron, Ohio.  He was struck by one of its trucks while he was operating his automobile at or near Akron.  In February, 1921, he recovered a judgment against the Rapid Transit Co. for $16,200.  Execution was returned "No property upon which to levy." He then brought an action against the Commercial Rapid Transit Co. and the Hartford Accident and Indemnity Co., alleging that the Hartford Co. had written insurance on the Commercial Transit Co. trucks, which was in force at the time of the accident.  A judgment was rendered for the defendants.  The Hartford Co. took charge of the defense of the original case, but later withdrew therefrom.  The insurance policy provided that the Hartford Co. was to indemnify the insured for all sums paid out for judgments.  Strachan prosecuted error, claiming the Indemnity Co. was liable while it claimed that inasmuch as the Transit Co. had not paid the judgment it, the Indemnity Co , owed nothing.  In affirming the judgment of the lower cort, the Court of Appeals held:

1. As there was nothing unlawful or illegal in the provisions of the insurance policy requiring the insured to pay the judgment to the injured party before the Insurance Co. was to be liable, the failure of the insured to pay the same relieved the Insurance Co. from any liability in that regard.

2. The mere taking charge of the action by the Insurance·Co. did not enlarge its liability or affect the contract limiting its liability.

3. Any law enacted by the state cannot apply to a contract entered into by the parties prior to the enactment of this law, if it changes either by enlarging or reducing the obligation in favor of one party and against the other; and therefore, the provisions of 9510-3 and 9510-4 GC. do not apply to the facts of this case, as these provisions were enacted subsequent to the making of the insurance contract.

Attorneys—Chas. Vaugh, for Strachan; Henderson & Barrett, Wilson, Hahn, Henderson & Wilson, and Austin, McKeehan, Merrick, Arter & Stewart, for Rapid Transit Co. et al; all of Youngstown.

## COMMON PLEAS
### No. 702
### ROCKWELL et al v. STATE

Common Pleas, Franklin County
No. 97655.   July 16, 1924

685.   JUSTICES PEACE—1. Have jurisdiction only to conduct preliminary hearings in criminal matters except in certain cases.

2. In Franklin Co. have no jurisdiction in criminol matters unless warrant charges that offense was commtited in the township of the justice.

ROGERS, J.

Epitomized Opinion

Published Only in Ohio Law Abstract

Rockwell and 13 others were tried, convicted and sentenced by one Kuhn, a Justice of the Peace of Marion township, for violation of the gambling statutes.   The warrants that were sworn out before Kuhn did not allege that the offenses were committed in Marion township, but charged that they were committed in Franklin county.  By consent one bill of exceptions was prepared for all the cases and error was prosecuted to the Common Pleas which held:

The statute confers no final jurisdiction in this kind of cases unless upon consent of the prisoner or upon a plea of guilty and in these cases neither of those two things occurred.  If the magistrate had any jurisdiction at all, it was to conduct a preliminary examination only.   As a final trial court the magistrate exceeded his jurisdiction and the cases must be reversed.

By 1558-55a GC. creating a Municipal Court of the City of Columbus no justice of the peace in Franklin county, other than Montgomery township, shall have jurisdiction unless the offense charged shall be alleged to have been committed within his township.  Hence the magistrate under these warrants had nd jurisdiction.   Judgment reversed and defendants discharged.

Attorneys—C. D. Saviers, for Rockwell et al; John R. King, Pros· Atty., and Roy E. Hughes, Asst. Pros. Atty., for State; all of Columbus.

# U. S FEDERAL COURTS
## Abstract Advance Opinions

## U. S. COURT OF APPEALS
### No. 703
### IRETON v. LINCOLN NAT. BANK
U. S. Appeals, Sixth Circuit

No. 4041. Decided July 2, 1924

**127. BANKRUPTCY—1.** Giving demand notes for amount of acceptances held not to show passing of title thereto.

2. Holder of notes may prove full amount against both maker and indorser.

HICKENLOOPER, D. J.

*Epitomized Opinion*

Prior to the bankruptcy of Ireton, he discounted with the claimant, the Lincoln National Bank, certain trade acceptances aggregating $31,884.64. These were drawn by the bankrupt on the Harrison Shoe Co. and the Kimball Bros. Co, retail shoe merchants in Chicago, for goods sold to said companies by the bankrupt. Such drafts were only accepted by the drawees, were endorsed by the bankrupt, and discounted in the usual course of business, by the bank. The avails of such discounts were credited to the account of the bankrupt and items charged to "foreign bills discounted." Likewise, prior to the bankruptcy of the Manss-Owens Co., all of these trade acceptances were presented to the acceptors, were dishonored and protested for non-payment and shortly thereafter each of the acceptors went into bankruptcy, or insolvency liquidation, under state laws.

Claims were proved by the bank in these proceedings to administer the estates of such acceptors, notwithstanding the fact of such dishonoring of the trade acceptances, and that their protesting bank demanded and took demand notes in place of these trade acceptances. The trade acceptanres were attached to the demand notes as collateral. At no time did the bank surrender possession of the acceptances, nor was any change made in the account of the bankrupt. The bank filed a claim with the trustee. The District Court allowed this claim, whereupon the trustee appealed. In affirming the judgment below, the Court of Appeals held:

1. Where bankrupt discounted trade acceptances with bank, and, on dishonor, gave demand notes covering amount of each trade acceptance, declaration in notes that trade acceptances were held as collateral held not to show passing of title thereto from bank to bankrupt, and accepting, in place of such title, of a lien thereon, as against inference that bank did not intend to part with absolute title to notes.

2. Where maker and indorser of notes or acceptor and indorser of a bill of exchange, are both bankrupt, holder may prove in each bankruptcy proceeding full amount due thereon, and may receive dividends, subject only to limitation that he shall not receive more than full amount of claim due him.

### No. 704
### AMERICAN RY. EXP. CO. v. ISLAND & GYPSUM FRUIT CO.
U. S. Appeals, Sixth Circuit

No. 4008. Decided June 13, 1924

**209. CARRIERS—1.** Consignor held entitled to maintain action for damage to shipment on refusal of consignee to accept goods.

2. Instruction that car load of fruit, if express matter, is required to be carried in express service time, held approved.

TUTTLE, D. J.

*Epitomized Opinion*

This was an action by the Island & Gypsum Fruit Co. against the American Ry. Exp. Co. to recover damages for unreasonable delay in shipping of certain fruit. The plaintiff was engaged in selling and shipping fruit. The Fruit Co. had turned over to the Express Co. six carloads of peaches, to be shipped and delivered to certain consignees. The Express Co. agreed to deliver the fruit within a reasonable length of time. A judgment was rendered for the plaintiff in the sum of $4,242.91. In affirming the judgment of the lower court, the U. S. Circut Court of Appeals held:

1. The fact that Fruit Co., before making a shipment of fruit by the Express Co. had sold the same to the consignees f. o. b. place of shipment, held not to defeat its right to maintain an action for damages for negligent delay in transportation, causing damage to the fruit, where because of such damage the consignees refused to accept it, the Fruit Co. released them from their contracts, and the fruit was sold for its account.

2. Instructions submitting to the jury the question whether a shipment of peaches was delivered to Express Co. as express matter, to be carried in the express service, and instructing them that, if they so found, it was required to carry and deliver them within the usual and customary time of express service, held correct.

**Attorneys**—Donald Melhorn, for Express Co.; Geo. A. True, for Island & G. Fruit Co.

## FEDERAL COURTS — Continued

### No. 705

GENERAL MOT. CORP. v. BELLÆVUE SAV. BANK CO.

U. S. Appeals, Sixth Circuit
No. 3982. Decided April 11, 1924

126. BANKS AND BANKING—Certificate of deposit held not due until payment of loan to another.

465. ERROR—Acquiescence, when court interpreted joint motions for directed verdict as submission of facts to court, prevents complaint of such submission.

PER CURIAM.

#### Epitomized Opinion

This was an action by the General Motors Co. against the Bellevue Savings Bank Co. to recover the sum, of $5,000, with interest, evidenced by a certificate of deposit issued by the bank, dated Dec. 6, 1921, and payable to the order of the General Motors Co. on the return of the certificate properly endorsed. The certificate provided that it was to draw interest at the rate of 3 per cent per annum if left on deposit for a term of three months or more, and also contained the provision: "This certificate is not to be cashed so long as the loan of $5,000 heretofore granted the Griswold-Wagg Motor Co. by the Bellevue Savings Bank remains unpaid. If said loan is reduced, said bank agrees to issue a new certificate of deposit in an ammount equaling the balance due on such loan, and same to be held under same conditions, difference between this certificate of deposit and new certificate to be paid in cash to said General Motors Co. at the time of such new certificate being issued." The lower court directed a verdict for the bank, whereupon Motors Co. prosecuted error. In sustaining the judgment of the lower court, the Court of Appeals held:

1. Where Motors Co. made a deposit with defendant bank and took a certificate of deposit, providing that certificate was not to be cashed as long as a loan for amount of certificate to another company remained unpaid, certificate was collateral to the loan, and was not due until loan was paid.

2. Plaintiff's acquiescence and silence, when the court interpreted joint motions for directed verdict, as a submission to the court of the law and the facts, and plaintiff's failure to indicate any desire to offer rebuttal proofs, held to prevent plaintiff from complaining of acceptance by the court of such submission at a possibly premature stage of the case.

Attorneys—Charles F. Ross and A. V. Cannon, Cleveland, for. Motors Corp.; Allen G. Aigler, Bellevue, for Bank.

### No. 706

SIMMONS v. UNITED STATES

U. S. Appeals, Sixth Circuit
No. 4015. Decided July 2, 1924

333. CRIMINAL LAW—1. Defense of entrapment not seriously considered when volume of narcotic business shows felonious intent.

2. Conviction of one plainly guilty not reversed for minor errors.

3. Entrapment not shown by sale of morphine to addict in government service.

933. POISONS—Requiring patients to produce certificates of incurable diseases under Tennessee statute, conflicing with federal act, held no defense.

DENISON, C. J.

#### Epitomized Opinion

Dr. Simmons, a practicing physician of Nashville, Tenn., was convicted of furnishing morphine in violation of the Harrison Anti-Narcotic Act (Comp. St. 6287g-6287q). It appeared that during nine months he had given to 108 persons, all of whom were morphine addicts, a total of 4,095 prescriptions, calling for 79,592 grains of morphine. It was his custom to recognize 8 grains per day as a maximum, and to give prescriptions intended to cover this supply for a period of six days. In affirming the conviction, the Court of Appeals held:

1. Where, in nine months, defendant, a physician, gave 108 persons 4,095 prescriptions, calling for 79,592 grains of morphine, his volume of business conclusively shows his intent, and defense of entrapment need not be seriously considered.

2. Where defendant was plainly guilty, a conviction will not be set aside, even if there were errors which would require a reversal in a doubtful case.

3. In a prosecution under the Harrison Anti-Narcotic Act (Comp. St. 6287g-6287q), that prescriptions were given to addict, who was in pay of government, acting as a detective, held not to show forbidden entrapment.

4. That physician required his patients to produce a certificate that they were afflicted with incurable diseases, as required by Acts Tenn. 1919, c. 105, and regulations thereunder, held not to constitute exculpatory good faith, within Harrison Anti-Narcotic Act (Comp. St. 6287g-6287q), as state law conflicts with federal act.

Attorneys—A. M. Tillman, for Simmons; Howard B. Shofner, for United States.

## STATE SUPREME COURT

(Continued from Page 660)

business in Cincinnati, and in connection with the same business he owned certain real estate. The deceased had a safe deposit box in the Central Trust Co. in Cincinnati. When this box was opened there were found certain shares of stock in Ohio corporations, shares of stock in foreign corporations, also U. S. Liberty Bonds and bonds of Clebourne, Texas. He also had a bank account with the Security Savings Bank & Trust Co. An application was made in the Probate Court to determine the inheritance tax. Counsel for the executrices agreed that the real estate, the machinery, the stock of Ohio corporations and the bank account are properly taxable under the Ohio Inheritance Tax Laws.

The Probate Court held that all the property found in his safe deposit box was taxable. The Common Pleas sustained the Probate Court in part and reversed in part. The Common Pleas held that the United States bonds, the bonds of Clebourne, Texas, and the stock in foreign corporations found in the safe deposit box were not taxable under the laws of Ohio. Error was prosecuted to the Court of Appeals. In affirming the judgment of the Common Pleas, the Court of Appeals held that the United States government bonds, the bonds of Clebourne, Texas, and the stock of foreign corporations found in the safety deposit box of Cincinnati were not taxable under 5332 or 5331 GC., or any other statutory provision in this state. The Tax Commission then filed a motion to certify in the Supreme Court. The principal and only question is:

1. Are stocks and bonds of foreign corporations belonging to a non-resident found in a safe deposit box in this state taxable under the Inheritance Laws of the State of Ohio?

Attorneys—Charles S. Bell, Cincinnati, Charles C. Crabbe, Atty. Gen., Columbus, and Charles W. Baker, Jr., Cincinnati, for Cassidy et al; Bettinger, Schmidt & Kreis, Cincinnati, for Ellenhorst.